USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSIE FERREIRA,

                Plaintiff,

-against-

DAVID DOSIN, POLICE CHIEF, and
VILLAGE OF HASTINGS-ON-HUDSON,

                Defendants.

23-cv-10336 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jessie Ferreira, ("Ferreira" or "Plaintiff") initiated this action on November 27, 2023 (ECF No. 1), alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming Fourteenth Amendment equal protection violations against Defendant David Dosin, police chief of Village of Hastings-on-Hudson ("Dosin"), and Defendant the Village of Hastings-On-Hudson ("the Village") (together, the "Defendants").

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff Jessie Ferreira is a female resident of the County of Westchester and works for the Village Police Department as a Sergeant. (Compl. ¶ 1.) In August 2019, Dosin was appointed as Chief of Police. (*Id*. ¶ 40.) Dosin worked for the Village Police Department since 1990 and was "thoroughly familiar with its sexist and racist culture." (*Id*. ¶ 41.) Officer Ed Fattorini ("Fattorini")

1

was hired as a police officer April 12, 2021. (*Id*. ¶ 42.) Fattorini was one of eleven police officers, supervised by four sergeants, one lieutenant and the chief. (*Id*. ¶ 43.)

In January 2021, Plaintiff, who was then four months pregnant, asked Dosin to switch her position with Sergeant Thomas O'Sullivan ("O'Sullivan"), who was then assigned as desk sergeant. (*Id*. ¶ 44.) O'Sullivan refused, citing undue hardship. (*Id*. ¶ 45.) O'Sullivan further stated that if Dosin switched his position with Plaintiff's it would constitute gender-based discrimination against him as a male officer. (*Id*. ¶ 46.) Dosin otherwise accommodated the Plaintiff, however, O'Sullivan printed out caselaw supporting his claims of gender-based discrimination and displayed such caselaw around the department. (*Id*. ¶ 47.) Dosin took no action to stop this behavior which targeted Plaintiff and made her uncomfortable. (*Id*. ¶ 48.) Dosin's refusal to intervene deviated from department policy and was due to "Dosin's devaluation of plaintiff on account of her gender." (*Id*. ¶ 49.)

On September 28, 2021, Plaintiff returned to work from maternity leave. (*Id*. ¶ 50.) Police Officer Chris Sorano ("Sorano"), in responding to a call about a suspicious vehicle, told a civilian that Plaintiff was "the Sergeant nobody likes" and stated he "hat[ed] Plaintiff." (*Id*. ¶¶ 51-53.) Plaintiff reported this to Dosin, who told Plaintiff he could not tell what he would do in response to Sorano. (*Id*. ¶¶ 54-55.) Sorano faced no consequences for disrespecting Plaintiff, who was Sorano's superior. (*Id*. ¶ 56.) Sorano's behavior contravened department rules, and yet no action was taken against "the offending male officer." (*Id*. ¶ 57.) To the contrary, Sorano was promoted to sergeant. (*Id*. ¶ 58.) Plaintiff also complained to Dosin about not being able to pump to breastfeed her infant in the publicly accessible bathroom due to other officers taking the bathroom's key; Dosin took no action in response. (*Id*. ¶¶ 60-61.) Thereafter, O'Sullivan broke the

lock to Plaintiff's locker, supposedly because it prevented him from accessing his locker. (*Id.* ¶ 62.) The Defendants took no action against O'Sullivan for his conduct. (*Id.* ¶ 64.)

Later, on December 5, 2021, Plaintiff experienced another inferior officer's insubordination that went unaddressed. (*Id.* ¶¶ 65-70.) Plaintiff gave Fattorini a direct order to accompany a young woman being transported by EMS, and Fattorini refused. (*Id.*) Plaintiff advised Dosin of Fattorni's insubordination, but Dosin took no action against him. (*Id.* ¶ 73.)

On November 27, 2022, Plaintiff emailed Dosin expressing her concern for cavalier responses by male officers to reports of domestic violence. (*Id.* ¶ 76.) Dosin directed Plaintiff to proceed through the chain of command to raise her concerns, contrary to his open-door policy which encouraged officers to directly raise issues to him. (*Id.* ¶¶ 77-78.) Dosin did not direct male sergeants to follow the same protocol. (*Id.* ¶ 78.)

Plaintiff also alleges another incident involving Fattorini behaving insubordinately, on or around December 11-12, 2022. Specifically, Plaintiff responded to a situation regarding a person being remanded to the jail. (*Id.* ¶ 79.) While Plaintiff responded, Fattorini called Plaintiff, and Plaintiff told him to "standby" as she was preoccupied. (*Id.*¶¶ 80-81.) The following day, Fattorini wrote an email to his lieutenant, alleging an officer safety issue because Plaintiff "told him to standby in what could have been a dangerous situation." (*Id.* ¶ 83.) This was contrary to Plaintiff's instructions, who previously explained that officers may disregard a standby order in an emergency situation and that officers needed to make the urgency clear, which Fattorini did not do. (*Id.* ¶ 84.) Plaintiff claims this was Fattorini "continuing his disrespectful, sexist conduct" and that he was "just trying to set her up." (*Id.* ¶ 85.) Plaintiff also reported to her lieutenant another incident involving Fattorini, along with Simmons, not following department policy. Plaintiff complained about Fattorini and Simmon's handling of a situation wherein a woman called the department

3

claiming someone was trying to kill her, specifically due to their failure to prepare a victim statement and collect necessary information from the alleged perpetrator. (*Id*. ¶¶ 87-91.) Plaintiff's lieutenant "again failed to support her, or department policy, and instead instructed her to speak with the officers." (*Id*. ¶ 91.) Plaintiff attempted to speak with Simmons, who only responded insubordinately, telling Plaintiff to "get the fuck out of here." (*Id*. ¶ 92.)

In May or June of 2023, Plaintiff saw email correspondence between Visalli and Officer Brecker ("Brecker"), wherein Visalli requested a photo of Plaintiff and Brecker responded by sending a photograph of Plaintiff in "tight fitting clothes." (*Id*. ¶ 93.)

When Plaintiff reported Officer Barry ("Barry") and Officer Simmons ("Simmons") to Dosin for engaging in a car pursuit, in violation of department policy, Dosin only complimented the two male officers and accused Plaintiff of attempting to get them in trouble. (*Id*. ¶¶ 94-98.)

In Summer 2023, Plaintiff sought to be promoted to lieutenant. (*Id*. ¶ 100.) Plaintiff took the civil service examination, "was reachable for the position" and "was the best qualified candidate for the position." (*Id*. ¶¶ 101-102.) Dosin interviewed Plaintiff on August 31, 2023; the interview "went well," and Plaintiff answered each question, all while throughout the interview Dosin rolled his eyes multiple times. (*Id*. ¶¶ 103-104.) Robert Gagliardi ("Gagliardi"), a male, was promoted over Plaintiff. (*Id*. ¶ 105.) Gagliardi had served in the police department since 2010 and was promoted to sergeant in April 2020. (*Id*. ¶ 106.) Dosin gave Gagliardi a start date one day before Plaintiff to provide him seniority over Plaintiff. (*Id*.) Plaintiff received more awards than Gagliardi for distinguished performance of police duties, namely life-saving service. (*Id*. ¶ 107.) Plaintiff also speaks three languages, has worked undercover, has a strong academic background, and has worked with the FBI and Secret Service. (*Id*.) Plaintiff also notes that Gagliardi, prior to

4

any promotion decision being announced, had on his calendar a "promotion meeting," as though he had already been selected for the promotion. (*Id*. ¶ 108.)

Plaintiff alleges that the lack of support from Dosin regarding inferior officer's insubordination frustrated her ability to perform as a supervisor. (*Id*. ¶ 111.) Dosin's lack of support "substantially deviates" from the way Dosin supported male sergeants and from departmental policy. (*Id*. ¶ 112.) Dosin did not support Plaintiff because he devalued her as a female supervisor. (*Id*. ¶ 113.) Dosin did not address a subordinate officer making vacation requests to the lieutenant when the subordinate officer was supposed to make such requests directly to Plaintiff, as his supervisor. (Compl. ¶¶ 114-119.)

Plaintiff alleges that the failure of her superiors to support her caused "significant stress, anxiety, and humiliation and created an intentionally inferior term and condition of employment on the basis of her gender." (*Id*. ¶ 121.) Plaintiff asserts that the failure to promote her to lieutenant was another iteration of the intentional discrimination Dosin subjected Plaintiff to. (*Id*. ¶ 122.) Plaintiff stresses that Dosin is "himself deeply immersed in the town's police culture which has undervalued females and infrequently represented them in the ranks of its police department." (*Id*.)

Based on the foregoing, Plaintiff brings Section 1983 claims alleging violation of the Fourteenth Amendment.

## PROCEDURAL HISTORY

On November 27, 2023, Plaintiff commenced this action against Defendant in his complaint (the "Complaint", ECF No. 1). Defendant filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 15 and 17). Plaintiff filed an opposition to the Motion ("the Opposition" or "Opp.", ECF No. 21). The Defendant filed a reply memorandum in further support of the Motion (the "Reply", ECF No. 18).

**LEGAL STANDARD**

A. **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B. **Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

In order for a defendant in a Section 1983 action to be held liable, the plaintiff must demonstrate the defendant was personally involved in the alleged constitutional violations. *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Important context is that a defendant "in a § 1983 action is not liable simply on the basis of holding a high position of authority." *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004). Additionally, "[p]leadings pursuant to § 1983 must contain 'more than mere conclusory

7

allegations.'" *Richard v. Fischer*, 38 F. Supp. 3d 340, 351 (W.D.N.Y. 2014) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988)).

## DISCUSSION

Plaintiff brings claims pursuant to Section 1983, alleging Fourteenth Amendment violations. The Court addresses them in turn.

### A. Section 1983 claims against Defendant Dosin – Failure to Promote

In order to state a Section 1983 claim for violation of the Fourteenth Amendment right to equal protection, a Plaintiff must allege that "(1) [they], compared with others similarly situated, w[ere] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 610 (2d Cir. 1980). To effectuate a Section 1983 claim for employment discrimination based on failure to promote, a plaintiff must show: "(1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Bunten v. Donat*, 2024 WL 1640054, *6 (S.D.N.Y. Apr. 16, 2024). In order "[f]or a disparity in qualifications to raise an inference of discrimination, 'the disparity should be enough that a reasonable employer would have found the plaintiff to be significantly better qualified for the job.'" *Id*. (quoting *United States v. City of New York*, 713 F. Supp. 2d 300, 320 (S.D.N.Y. 2010)).

Here, Plaintiff alleges that Defendants discriminated against her on account of her gender in failing to promote her to lieutenant, instead promoting Gagliardi. (Compl. ¶¶ 105, 113.) Plaintiff asserts that she had "superior qualifications," "took the civil service examination and was reachable for the position," was "the best qualified candidate for the position," and that the "failure

to promote plaintiff to lieutenant" "reflects the intentional discriminatory treatment" that Plaintiff has been subject to. (Compl. ¶¶ 101-102, 122.) Plaintiff notes she "received more awards than Gagliardi for distinguished performance of police duties, including life-saving service, speaks three languages, had worked as an undercover officer, had a strong academic background, and had worked with the FBI and secret service." (Compl. ¶ 107.)

In response, Defendants cite to the results of a civil service examination, noting that O'Sullivan, a male candidate, "placed highest on the civil service promotional list [with a score of 86] . . . [and] was not promoted." (Mot. p. 13.) Gagliardi placed second, receiving a score of 79, and Plaintiff's "test score of 73.00 was the lowest of the three candidates for promotion [to lieutenant] and placed her last on the list of eligible candidates." (*Id*. p. 14.) Defendants correctly note that the Court may consider these results as part of its ruling (affixed to the Motion as Exhibit A), given the Complaint "renders the document integral" as the results of the civil service examination is at the crux of Plaintiff's argument for gender-discrimination. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002).

As currently pled, Plaintiff does not state a plausible Section 1983 claim for violations of Plaintiff's Fourteenth Amendment right to equal protection. Plaintiff is able to satisfy the first, second, and third prong of the analysis for a failure to promote claim: she is a member of a protected class, she was evidently qualified for the job she held (*see* Compl. ¶ 107), and she suffered an adverse employment action – not being promoted to Lieutenant. *See Oliphant v. Caldwell*, 212 F. Supp. 3d 480, 486 (S.D.N.Y. 2016) (noting that failure to promote can qualify as an adverse employment action). However, she is unable to satisfy the fourth prong – that the failure to promote occurred under circumstances giving rise to an inference of discrimination.

The Complaint is fatally deficient as it leaves the Court unable to analyze whether Plaintiff was qualified for the position of lieutenant, which, by extension, precludes any possibility of the Court discerning an inference of discrimination. While the Complaint does list accolades received by and the accomplishments of Plaintiff, the issue remains that Plaintiff does not plead how such professional history ties into being qualified for lieutenant. (Compl. ¶ 107.) Without articulating the responsibilities of a lieutenant or listing the requisite qualifications, Plaintiff cannot establish that she was qualified for the position. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (failure to promote claim properly dismissed where Plaintiff did not clarify the responsibilities of the sought after position). This necessarily hinders the ability of the Court to ascertain whether the circumstances surrounding the denial of the promotion give rise to an inference of discrimination.

The only information the Complaint makes clear is relevant to qualifying for lieutenant is the civil service examination's results: "Plaintiff took the civil service examination and was reachable for the position [of lieutenant]." (*Id*. ¶ 101.) However, this metric does not bode well for Plaintiff. As Defendants point out, Plaintiff scored the lowest of the three candidates vying for promotion to lieutenant. (Mot. Exhibit A.) Additionally, the selected candidate, Gagliardi, received a higher score than Plaintiff on the civil service examination as discussed *supra*. Therefore, rather than indicate a significant disparity in qualifications that would favor Plaintiff's candidacy over Gagliardi (and thereby give way to an inference of discrimination), the Complaint's evidences that Gagliardi was the superior candidate for the position. (Compl. ¶¶ 101, 107, Mot. Exhibit A.) Additionally, that Gagliardi might have been preselected for the position as the Complaint suggests is of no moment (Compl. ¶ 109); it remains that Gagliardi, based on the current allegations of the

Complaint, was the superior candidate based on the civil service examination results, and thus any supposed preselection does not give way to an inference of discrimination. (*Id.*)

Accordingly, the Court finds that the Complaint does not give rise to an inference of discrimination in the circumstances surrounding Gagliardi being promoted over Plaintiff. *See Bunten*, 2024 WL 1640054, *6. As a result, the Court finds that, as currently pled, the Complaint fails to plausibly allege a failure to promote claim against Defendants and thus dismisses Plaintiff's Section 1983 claim without prejudice.

**B. Section 1983 claim against Defendant Dosin – Disparate Treatment**

The Complaint appears to fashion a Section 1983 claim predicated on disparate treatment through denial of equal terms and conditions of employment in comparison to Plaintiff's male colleagues. (Compl. ¶ 124.) Plaintiff specifically rests her claim on the failure of superior officers to support Plaintiff in dealing with insubordinate officers. (*Id.* ¶ 121.) The analysis for Plaintiff's disparate treatment claim is the same as the analysis for Plaintiff's failure to promote claim. *See Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir. 2006) (noting that a Plaintiff claiming disparate treatment must establish: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination").

To restate the relevant facts, the Plaintiff alleges that "male sergeants and lieutenant are routinely accorded much more respect than she is," (Compl. ¶ 117) and that officers "respect[] the authority of male sergeants." (Compl. ¶ 115.) Plaintiff also states that the support she received "deviate[d] from the manner in which the chief [] supported male sergeants." (Compl. ¶ 112.) The Complaint avers that Defendants took no action to address insubordinate, inferior male officers. (*See* Compl. ¶¶ 55, 73, 97-98, 111, 114, 118-119, 121.) Plaintiff is able to satisfy the first and

11

second prongs for reasons discussed *supra*. Where the Complaint falls short is the third prong (and, by extension, the fourth prong): Plaintiff does not demonstrate that she experienced an adverse employment action (disparate treatment) and thus there are no circumstances to base an inference of discrimination off.

As a matter of framing, the Court notes that Plaintiff may not bring a Section 1983 claim based on conclusory allegations. *Richard*, 38 F. Supp. 3d at 351. Here, the factual allegations offered are indeed conclusory and do not specifically plead how male supervisors were treated more favorably than Plaintiff. While the Complaint does offer a litany of examples of insubordination from inferior officers, Plaintiff does not offer precise allegations where male supervisors, when confronted with insubordinate officers, received support. Instead, Plaintiff is only offering "general allegations" in which male and female officers "are treated differently" but "does not plead facts to show she was treated differently than a similarly situated" male officer. *McKinney v. New York*, 2022 WL 602970, *3 (S.D.N.Y. Mar. 1, 2022). This is simply not enough.

Plaintiff gets closer to meeting this standard when she, albeit still generally, states that male officers were allowed to go directly to the Chief regarding any concerns they had; however, the issue remains that Plaintiff does not specifically offer examples as to instances where this occurred – where male officers went to the Chief directly and were not redirected to the chain of command. (Compl. ¶ 77.) While the Court is "obligated to draw the most favorable inferences that [Plaintiff]'s complaint supports, [the Court] cannot invent factual allegations that [s]he has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Courts have routinely held that "[g]eneral assertions that Plaintiff was subjected to different treatment than her [male colleagues] . . . without more, is insufficient." *McKinney*, 2022 WL 602970 at *3; *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, 2012 WL 860367,

12

*6 (S.D.N.Y. Feb. 27, 2012) (noting that "to withstand a motion to dismiss, a plaintiff must allege specific examples of others similarly situated who were treated more favorably"); *see also Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 CIV. 3075 (RWS), 1997 WL 727479 (S.D.N.Y. Nov. 21, 1997) (noting that "[a]lthough the pleading standard on a motion to dismiss is a liberal one, 'bald assertions and conclusions of law will not suffice'") (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996)). Without specifically identifying instances where male supervisors received support Plaintiff did not receive when dealing with insubordinate officers, Plaintiff cannot demonstrate she suffered disparate treatment – that she suffered an adverse employment action. By extension, the Court cannot find that the adverse employment action occurred in circumstances giving rise to an inference of discrimination because there was no adverse action to begin with. *See Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) (noting that where Plaintiff failed to demonstrate they were subject to an adverse employment action they, correspondingly, failed to make out a *prima facie* case of discrimination).

The Court therefore finds that, as currently pled, the Complaint fails to plausibly allege a disparate treatment claim against the Defendants, and thus dismisses Plaintiff's Section 1983 claim without prejudice.

### C. Village of Hastings-on-Hudson - Municipal Liability

In order to "establish the liability of a municipality under Section 1983 for unconstitutional acts by its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Powell v. Gardner*, 891 F.2d 1039, 1045 (2d Cir. 1989). A "properly pled Monell claim establishes a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Barrett v. City of Newburgh*, 720 F. App'x 29, 31 (2d Cir. 2017) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[O]fficial municipal

policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff must "allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Isaac v. City of New York*, 17 Civ. 1021 (PGG), 2018 WL 1322196, *6 (S.D.N.Y. March 13, 2018) (quotations and citations omitted). Otherwise, "Congress did not intend municipalities to be held liable [under Section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Srvs. of the City of N.Y.*, 436 U.S. 658, 691 (1978).

Because the Court has not found a cognizable constitutional violation of Plaintiff's rights, the Court finds that the Village is not subject to Section 1983 liability. It may be that Plaintiff can amend the Complaint so as to allege facts that would support imposing Section 1983 liability, but as currently written, the Court finds that Plaintiff has not pled a plausible Section 1983 claim against the Village and dismisses the claim without prejudice. *See Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 486 (S.D.N.Y. 2010) (noting that County of Westchester could not be held "accountable for a constitutional violation under § 1983 unless [Plaintiffs] demonstrate[d] that Westchester employees deprived them of a federal constitutional or statutory right").

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants David Dosin and the Village of Hastings-on-Hudson's motion to dismiss Plaintiff's Section 1983 claims without prejudice. Plaintiff is granted leave to file an Amended Complaint by January 7, 2025. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by

14

January 31, 2025 and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by February 21, 2025. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

      The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15.

Dated:   November 26, 2024                                SO ORDERED:
           White Plains, New York

                                                          NELSON S. ROMÁN
                                                         United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                                                                       **CIVIL CASE DISCOVERY PLAN**

                       Plaintiff(s),        **AND SCHEDULING ORDER**

- against -

                      Defendant(s).     _____ CV _____ (NSR)

---------------------------------------------------------------x

  This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge